1  **Tim A. Pori (SBN 189270)**
   **John F. Baumgardner (SBN 275674)**
2  LAW OFFICES OF TIM A. PORI
   521 Georgia Street
3  Vallejo, CA 94590
   Tel:   (707) 644-4004
4  Fax:   (707) 644-7528

5  Attorney for Plaintiffs SEAN O'TOOLE,
   KELLEY BARBARA O'TOOLE, STEVEN DANIEL LEE,
6  JENNIFER LYNN CURTIS, and JACK FOSTER

7

8                    **UNITED STATES DISTRICT COURT**

9               **NORTHERN DISTRICT OF CALIFORNIA**

10

11  SEAN O'TOOLE, KELLEY BARBARA          Case No.  CV 11-01502 EMC
    O'TOOLE, STEVEN DANIEL LEE,
    JENNIFER LYNN CURTIS, and JACK        **PLAINTIFF'S FIRST AMENDED**
12  FOSTER,                               **COMPLAINT FOR DAMAGES**

13            Plaintiffs,                 **42 USC § 1983; Search and Illegal**
                                          **Seizure in Violation of the Fourth**
14  vs.                                   **Amendment to the United States**
                                          **Constitution; Conspiracy to Violate**
15  CITY OF ANTIOCH, ANTIOCH POLICE       **Plaintiffs' Civil Rights;  Liability 18 USC**
    DEPARTMENT, JAMES HYDE CHIEF          **§§1961 - 1968; RICO Violations Pursuant**
16  OF ANTIOCH POLICE DEPARTMENT,         **to USC 1964©) for Injury to Business and**
    NORMAN WIELSCH, MICHAEL               **Personal Property**
17  McGARY, LOUIS LOMBARDI, JOSHUA
    VINCELET, JAMES WISECARVER JR.,       **JURY TRIAL DEMANDED**
18  STEVEN AIELLO, STEVEN
    BERGERHOUSE, CHRISTOPHER
19  BUTLER, RONALD KRENZ, DANIELLE
    JOANNIDES, STEPHANIE A. CHALK,
20  CAPTAIN LEONARD ORMAN, AND
    DOES 1 - 20, inclusive,
21
              Defendants
22

23  _____/

                         **JURISDICTION**
24

25        1.      This is a civil rights action arising from Defendants' unreasonable seizure of their

26  persons, business, papers, and effects on behalf of  Plaintiffs SEAN O'TOOLE, KELLEY

27  BARBARA O'TOOLE, STEVEN DANIEL LEE, JENNIFER LYNN CURTIS, and JACK

28

1    FOSTER. This action is brought pursuant to 42 USC §§ 1983 and 1988, 18 USC § § 1961-1968

2    and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is

3    founded upon 28 USC §§ 1331 and 1343(a)(3) and (4),and 18 USC § § 1965(b) and (d)  and the

4    aforementioned statutory and constitutional provisions. This complaint may be pled in the

5    alternative pursuant to Fed.R.Civ.P 8(e)(2).

6        2.    A substantial part of the events and/or omissions complained of herein occurred in

7    CONTRA COSTA County, California, and this action is properly assigned to the San Francisco

8    or Oakland Divisions of the United States District Court for the Northern District.

9                                    **PARTIES**

10       3.    Plaintiff SEAN O'TOOLE is, and at all times herein mentioned was, a resident of

11   the City of Antioch, County of Contra Costa, State of California.

12       4.    Plaintiff KELLEY BARBARA O'TOOLE is, and at all times herein mentioned

13   was, a resident of the City of Antioch, County of Contra Costa, State of California.

14       5.    Plaintiff STEVEN DANIEL LEE is, and at all times herein mentioned was, a

15   resident of the City of Concord, County of Contra Costa, State of California

16       6.    Plaintiff JENNIFER LYNN CURTIS is, and at all times herein mentioned was, a

17   resident of the City of Brentwood, County of Contra Costa, State of California.

18       7.    Plaintiff JACK FOSTER, and at all times herein mentioned was, a resident of the

19   City of Antioch, County of Contra Costa, State of California

20       8.    Defendant CITY OF ANTIOCH [hereinafter "CITY"] is a municipal corporation,

21   duly organized and existing under the laws of the State of California.  Defendant JAMES HYDE

22   was and at all times herein mentioned was the Chief of Police for the CITY, acting under color of

23   law and in the course and scope of his employment for Defendant CITY.

24       9.    At all times mentioned herein, Defendants  JOSHUA VINCELET, JAMES

25   WISECARVER JR., STEVEN AIELLO, STEVEN BERGERHOUSE, Captain LEONARD

26   ORMAN, RONALD KRENZ, DANIELLE JOANNIDES, and STEPHANIE A. CHALK, and

27   DOES 1-20  [hereinafter referred to collectively as "Defendant OFFICERS"] were employed as

28

1   police officers for Defendant CITY.  Defendant OFFICERS are sued individually and in their

2   capacity as police officers for the CITY.

3        10.    At all times mentioned herein, Defendant Police OFFICERS NORMAN

4   WIELSCH, LOUIS LOMBARDI, and MICHAEL McGARY were at all material times employed

5   or assigned as members of the California Department of Justice Bureau of Narcotics

6   Enforcement (BNE) and Contra Costa County Narcotics Enforcement Team (CCCNET), and

7   were acting within the course and scope of that employment or assignment and are sued

8   individually and in their capacity as police officers for the BNE and CCCNET.

9        11.    Defendant CHRISTOPHER BUTLER was acting as a private individual who had

10   conspired WITH Defendant OFFICERS to gain control of the continuing criminal enterprise of

11   DEFENDANTS to deprive PLAINTIFFS of their civil rights and to injure their business and

12   property interests.

13        12.    By engaging in the conduct described herein, Defendant OFFICERS acted under

14   color of law and in the course and scope of their employment for Defendant CITY and in the

15   scope of employment for the BNE.  By engaging in the conduct described herein, Defendant

16   OFFICERS exceeded the authority invested in them as police officers under the U.S.

17   Constitution and as employees of the CITY and BNE.

18        13.    Plaintiffs are informed and believe and thereon allege that each of the Defendants

19   sued herein was intentionally, wrongfully, and otherwise responsible in some manner for the

20   events and happenings as hereinafter described, and proximately caused  injuries and damages to

21   Plaintiffs. Further, one or more DOE defendants was at all material times responsible for the

22   hiring, training, supervision, and discipline of Defendants and other DOE Defendants.

23        14.    Plaintiff is ignorant of the true names and capacities of Defendant DOES 1

24   through 20, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff is

25   informed and believes and thereon alleges that each Defendant so named is responsible in some

26   manner for the injuries and damages suffered by Plaintiffs as set forth herein.  Plaintiffs will

27   amend this complaint to state the true names and capacities of Defendant DOES 1 through 20,

28

1    inclusive, when they have been ascertained.

2        15.    At all times herein mentioned each named and each DOE  Defendant was an

3    agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining

4    Defendants, and in doing the things herein alleged, was acting within the course and scope of that

5    relationship and/or approval of Defendant CITY and/or BNE.

6        16.    Plaintiffs are further informed and believe, and thereon allege, that each of the

7    Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and

8    ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as

9    may be hereinafter otherwise specifically alleged.

10        17.    The acts and omissions of Defendants AIELLO, VINCELET, WISECARVER

11    JR., BERGERHOUSE, Captain LEONARD ORMAN, RONALD KRENZ, DANIELLE

12    JOANNIDES, STEPHANIE A. CHALK, and DOES 1-20  as set forth herein at all material times

13    were pursuant to the actual customs, policies, practices and procedures of the CITY OF

14    ANTIOCH and APD.

15        18.    The acts and omissions of Defendants  WIELSCH, LOMBARDI, McGARY and

16    DOES 1-20 as set forth herein at all material times were pursuant to the actual customs, policies,

17    practices and procedures of the California Department of Justice Bureau of Narcotics

18    Enforcement and/ or the Contra Costa County Enforcement Team (CCCNET) .

19        **STATEMENT OF FACTS PERTAINING TO PLAINTIFFS  O'TOOLE**

20        19.    Plaintiffs incorporate by reference each and every allegation contained in

21    Paragraphs 1-18 as though fully set forth herein.  On information and belief, on or about October

22    14, 2009, Plaintiffs SEAN O'TOOLE AND KELLEY BARBARA O'TOOLE. were owning

23    and/or operating a business known as "GROW IT YOURSELF GARDENS, LLC," LOCATED

24    AT 401-F SUNSET DRIVE, ANTIOCH, CALIFORNIA  94509.

25        20.    Upon information and belief, on or about October 14, 2009, in the City of

26    Antioch, County of Contra Costa, California, in the afternoon, Plaintiff KELLEY BARBARA

27    O'TOOLE brought lunch to the staff and her tenants at a business known as "The Fashion

28    Plaintiffs' First Amended Complaint For Damages                                              4

1   Statement," 401-E Sunset Drive, Antioch, California 94509.  After Mrs. O'TOOLE dropped off

2   the food, she began to walk next door to Ace Hardware Store with her tenant Anthony Denner.

3   As Mrs. O'TOOLE was approaching the Ace Hardware parking lot, she was detained under the

4   supervision of Captain LEONARD ORMAN by VINCELET and WISECARVER JR.  Mrs.

5   O'TOOLE informed Defendant VINCELET the other officers present that she was the landlady

6   of the Fashion Statement building, rented by Anthony Denner  and that she had no other

7   connection with the business.

8        21.     Upon information and belief,  Defendants  WIELSCH, VINCELET,

9   WISECARVER JR, AIELLO, BERGERHOUSE, Captain LEONARD ORMAN, RONALD

10  KRENZ, DANIELLE JOANNIDES, STEPHANIE A. CHALK, and DOE DEFENDANTS

11  accompanied by Detectives Stanton, Bittner, Green, Koch, Chang, Kidd, and Hoffman, arrived to

12  serve a search warrant on "The Fashion Statement" business.

13       22.     Upon information and belief, after Mrs. O'TOOLE was detained and searched,

14  she was eventually arrested and taken to the Antioch Police Department by either Vincelet and/or

15  one of the DOE DEFENDANTS without legal justification or excuse and an unsuccessful

16  attempt was made to obtain consent to search Mrs. O'TOOLE'S business. After entering the

17  Fashion Statement, under the supervision of Captain LEONARD ORMAN, VINCELET,

18  WIELSCH, WISECARVER JR., AIELLO, BERGERHOUSE, KRENZ, and other DOE

19  DEFENDANTS located a locked door and forced it open and found some chemicals and

20  hydroponic growing equipment inside a small room which they allegedly suspected to be

21  evidence of a marijuana grow which may have occurred at some unknown prior occasion.  No

22  marijuana plants were found growing in the room behind the locked door.

23       23.     Upon information and belief, from the smaller room, Defendants VINCELET,

24  WISECARVER JR., and other DOE DEFENDANTS entered another room that he alleged

25  contained more hydroponic growing equipment, but no marijuana or marijuana plants.   Under

26  the supervision of Captain LEONARD ORMAN, Defendants VINCELET, WISECARVER JR.,

27  WIELSCH, AIELLO, BERGERHOUSE, KRENZ, and DOE Defendants then forced entry into a

28

Plaintiffs' First Amended Complaint For Damages                                          5

large open warehouse from a backroom of the Fashion Statement business.

24.     Upon information and belief, after forcing entry under the supervision of Captain LEONARD ORMAN, DEFENDANTS VINCELET, WISECARVER JR., WIELSCH, AIELLO. BERGERHOUSE, KRENZ,  and several DOE DEFENDANTS located a large warehouse containing brand new hydroponic growing equipment as well as a silver Chevrolet Impala registered to Plaintiff SEAN O'TOOLE.  Mr. Denner allegedly told DEFENDANT VINCELET and the defendant officers that the warehouse and the other rooms containing the hydroponic equipment belonged to the hydroponic store next door and that Denner did not have a key or any other means of access to those rooms.

25.     Defendant VINCELET asked Mr. Denner about some video surveillance cameras he had observed and Mr. Denner informed him that the cameras did not belong to him and must therefore belong to the OTOOLE's business.

26.     Upon information and belief, under the supervision of Captain LEONARD ORMAN, Defendants VINCELET, WISECARVER JR. WIELSCH,  AIELLO, BERGERHOUSE, KRENZ, and other DOE defendants attempted to make contact with Plaintiffs' store and SEAN O'TOOLE went outside to the parking lot to speak with him.  SEAN O'TOOLE refused to allow VINCELET or any other Officer permission to enter his store to conduct a search.

27.     Upon information and belief, SEAN O'TOOLE did allow VINCELET, WISECARVER JR. and other DOE OFFICERS permission to go to the back of the warehouse to assure them that there was no marijuana growing in his store warehouse.  Because the store front is secured by an electric lock, potential customers can only be admitted to the store if the electronic door lock is released by a store employee to allow access.

28.     Upon information and belief, before Mrs. O'TOOLE was removed from the premises, SEAN O'TOOLE  began to question the officers why his wife was being detained and asked Defendants VINCELET, WISECARVER JR., and DEFENDANT DOE OFFICERS to release his wife.

29.    Upon information and belief,  Defendants VINCELET and WISECARVER JR. informed Plaintiff SEAN O' TOOLE that they were going to freeze his business.  They later detained and searched him, and eventually arrested him and seized his electronic door unlock device and entered his business.

30.    Under the supervision of Captain LEONARD ORMAN, Defendants VINCELET, WISECARVER JR., WIELSCH,  AIELLO, BERGERHOUSE, KRENZ, and DOES 1-20 entered the O'TOOLES' store with guns drawn and several of Mr. O'TOOLE'S employees were stopped and their pockets were searched at gunpoint and their property was seized by the above named Defendants without reasonable suspicion or probable cause that they had been involved in any criminal activity. The above-named Defendants then detained for an overly prolonged period of time the O'TOOLES' employees after the search within their store.  Defendant ORMAN had left the store sometime before it was entered by the above-named Defendant OFFICERS at gunpoint.

31.    One store surveillance video depicts Defendant WISECARVER JR. climbing a ladder to reach a video camera inside the warehouse containing an automobile which Defendants VINCELET, WISECARVER JR., WIELSCH, AIELLO, BERGERHOUSE, and KRENZ, knew was registered to SEAN O'TOOLE.  WISECARVER JR. turned the camera in a direction away from its original position thereby concealing the activities of the Defendants while they remained in the warehouse.  Upon information and belief, after the camera was turned away from the warehouse, Defendants VINCELET, WISECARVER JR., WIELSCH,  AIELLO, BERGERHOUSE, and KRENZ seized several boxes of Plaintiff SEAN O'TOOLE'S sports memorabilia and other items which were not listed on the return of the search warrant. Throughout an approximately three-hour video of the event, all of the defendants can be seen communicating on cellular phones.

32.    The store surveillance cameras clearly depict the Defendants VINCELET, WISECARVER JR., WIELSCH, AIELLO. BERGERHOUSE, KRENZ, JOANNIDES, CHALK, and DOE DEFENDANTS 1-20 conducting illegal searches of Plaintiffs' business. WISECARVER JR. illegally opened and searched Plaintiffs' mail box and read their envelopes.

1    WIELSCH, WISECARVER JR., VINCELET, AIELLO, BERGERHOUSE, KRENZ, and DOE

2    DEFENDANTS 1-20 illegally searched through closets and Plaintiffs' office.  Defendants

3    AIELLO and WISECARVER JR. illegally searched file folders, customer receipt books and

4    Plaintiffs' private business papers.  Defendant AIELLO turned off one of Plaintiffs' computers.

5    Defendants WIELSCH and KRENZ, used the O'TOOLES' store counter to examine the

6    identification cards seized from individuals and to take notes.  Defendant JOANNIDES also

7    examined the identification cards seized from the detained individuals.  Defendant CHALK took

8    photographs of the inside of the store.   The above-named defendants remained inside the

9    business for almost three hours before the search warrant authorizing its search was issued.

10        33.    Upon information and belief,  Defendant VINCELET made material

11   misstatements of fact in a Statement of Probable Cause in support of a search warrant including

12   claims that he could smell a strong odor of marijuana throughout the business despite the fact

13   that there was insufficient marijuana to emanate a strong odor.  Defendant VINCELET also

14   included false statements that he attributed to individuals he detained including Plaintiff SEAN

15   O'TOOLE which were used to support probable cause to issue a search warrant.  Defendant

16   VINCELET  also intimidated witnesses into making false statements in order to establish

17   probable cause.  Vincelet also omitted material statements of fact which if included in the

18   warrant would have negated probable cause such as the fact that although DEFENDANTS were

19   present at and in fact searched the O'TOOLES' entire business for at least three hours before

20   requesting the warrant, they found no marijuana grow operation and no evidence after their

21   presence in the business that the OTOOLES were involved in any criminal activity. On

22   information and belief Defendant WISECARVER JR. fabricated a police report in support of the

23   false arrest and illegal search of Daniel Leal when he wrote that he arrested at Mr. Leal at 6:33

24   p.m. while present to serve a warrant at the Grow it Yourself Gardens when in fact the warrant

25   was not signed until 7:05 p.m. that same evening.

26        34.    According to the return on the search warrant, DEFENDANTS seized, among

27   other things, at least $1,787.00 in U.S. Currency, one Charter Arms Firearm, a .44 caliber pistol

28   Plaintiffs' First Amended Complaint For Damages                                      8

revolver (which was in a locked console in a company vehicle outside the business) numerous business documents, a U.S. Customs uniform, two digital scales, a glass pipe, an unspecified amount of marijuana from a safe, an unspecified amount of marijuana from an office, and three business computer towers.

35.     Upon information and belief, the property that was seized and not documented on the return to the search warrant as required under California Penal Code section 1524 included: three surveillance cameras.  Defendants also seized daily sales records from the day of October 14, 2009, as well as daily sales records for the month of October and September, sales tax and daily records for 2009, and two iPhone 3G's from the O'TOOLES.

36.     Upon information and belief, Defendants also seized but did not document Mr. O'TOOLE'S wallet, credit cards, identification, health insurance cards, currency, and a $100.00 Victoria's Secret gift card  that was in Mrs. O'TOOLE'S wallet. Defendants also seized, but did not document: a leather portfolio notebook that was in the company van, Mr. O'TOOLE'S  social security card, Migraine medication prescribed to Mrs. O'TOOLE which was taken from her vehicle, and several boxes of expensive and unique sports memorabilia from the warehouse of Suite E of the O'TOOLES'.

37.     Upon information and belief,  Defendants also seized but did not document a jumpsuit work uniform belonging to SEAN O'TOOLE  which was in the company van, approximately $300.00 cash from SEAN O'TOOLE'S  wallet, and Software:  Microsoft Office, Quickbooks, Quickbooks Point of Sale.  Replacement value:  approx. $1,700.

38.     Upon information and belief,  Defendants also seized but did not document shop keys, car keys, alarm remote unlock devices, front door remote unlock devises, and SEAN O'TOOLE'S handgun safety certificate.

39.     On information and belief, although Defendants arrived at the O'TOOLES' business as early as 3:17 p.m. and conducted a thorough search of the business, a fraudulently obtained search warrant permitting a search of the business was not signed until 7:15 p.m.

///

40.     Upon information and belief, DEFENDANT WISECARVER JR. falsified at least one police report pertaining to the detention and arrest of Daniel Lee Leal, one of Mr. O'TOOLE'S customers, when he wrote in his report that he detained Mr. Leal inside the store after he had served the search warrant at the O'TOOLES' business.  In fact he arrested Mr. Leal at least one hour before the search warrant was signed.

41.     Upon information and belief,  Defendants VINCELET, WISECARVER JR., WIELSCH, AIELLO, BERGERHOUSE, KRENZ, JOANNIDES, CHALK and Defendant DOES conspired to fabricate a false Statement of Probable Cause and false police reports to conceal their illegal search and seizure of the OTOOLES' employees, and the O'TOOLES' persons, business, papers and effects and to close down the O'TOOLES' business.

42.     Despite the strict mandate of California Penal Code section 1537 which requires that "the officer must forthwith return the warrant to the magistrate, and deliver to him a written inventory of the property taken. . . " the warrant and return of property seized pertaining to the search of the business were not returned to the magistrate until November 13, 2009.

43.     On May 26, 2010, plaintiffs made a formal written request to Defendant VINCELET for the return of their business records and computer hard drives pursuant to California Penal Code section 1534.  The request was sent via Certified Mail via the US Postal service and was signed for on June 1, 2010 by a member of the Antioch P.D.  Defendant VINCELET did not respond to the request.

44.     On August 30, 2010, the O'TOOLES  filed a Petition for a Hearing on the Return of Property in order to obtain their papers and computer hard drives.  On October 15, 2010, a Superior Court Judge ordered that the PLAINTIFFS' paper records and three computer towers released.

45.      Upon information and belief, at all times during the events described above, the defendant OFFICERS were engaged in a joint venture.  The individual Officers assisted each other in performing the various described acts and lent their physical presence and support and the authority of their office to each other during said above-named events. In addition, defendant

Plaintiffs' First Amended Complaint For Damages                                                    10

1    Officers caused Mr. and Mrs. O'Toole to incur loss of property when they illegally seized their

2    computers, business records, personal property which caused them to incur replacement costs.  In

3    addition, defendant OFFICERS required the O'TOOLES to incur attorney fees to obtain the return

4    of their business records and computers, lost income, bail fees and loss of his personal property.

5    Furthermore, the defendant OFFICERS gained control over the criminal enterprise by pursuing

6    improper criminal investigations of the O'TOOLE'S place of business, causing them lost

7    employment opportunities and executing fraudulently obtained search warrants to seize their

8    persons and personal property.

9    **STATEMENT OF FACTS PERTAINING TO  STEVEN DANIEL LEE**

10        46.    Plaintiffs incorporate by reference each and every allegation contained in

11   Paragraphs 1-45 as though fully set forth herein.  On information and belief, or about October 14,

12   2009, in the City of Antioch, County of Contra Costa, California, Plaintiff LEE was working at

13   the Grow It Yourself Gardens store.  The Defendants at one point wanted to look/search inside

14   Plaintiffs O'TOOLES' store and warehouse but SEAN O'TOOLE would not allow them to do so.

15   He told Defendants that they could look from outside the rear of the warehouse to prove he had no

16   marijuana plants growing inside his warehouse.  Plaintiff LEE accompanied SEAN O'TOOLE

17   and some of the Defendant Officers to the rear from outside and they were shown the storage area.

18        47.    On information and belief, Plaintiff LEE was informed that the store would be

19   closed due to the disruption caused by the police activity, so he gathered some of his belongings

20   into his backpack and then he went out to his girlfriend's parked 2006 Toyota Highlander and

21   placed it securely inside.

22        48.    On information and belief, Defendants VINCELET, WISECARVER JR.,

23   WIELSCH, AIELLO. BERGERHOUSE,  KRENZ, and DOES 1-20 later entered the O'TOOLES'

24   store with guns drawn and stopped and searched Plaintiff LEE at gunpoint without reasonable

25   suspicion or probable cause that he had been involved in any criminal activity. The Defendants

26   then detained Plaintiff Lee for an overly prolonged period of time after the search within the store.

27        49.    On information and belief, Plaintiff was told by the Defendants that he could not

28   Plaintiffs' First Amended Complaint For Damages                                    11

1   leave and everyone in the store was ordered to give them their car keys, without explanation.

2   Plaintiff LEE's keys were found by Defendants on a shelf nearby, and the Defendants used them

3   to unlock his girlfriend's Toyota in order to search it without his permission.

4       50.    On information and belief, Defendant AIELLO came to Plaintiff LEE after the

5   search of his person and property and told him in a quiet voice that the marijuana seized from his

6   backpack wasn't anything to worry about because the possession of Marijuana discovered was less

7   than an ounce, and that he'd probably just get a citation and be able to go home.  Plaintiff LEE did

8   explain to the Officers that he had an active and recently issued Medical Marijuana Card, but they

9   just ignored him.

10       51.    On information and belief, VINCELET, WISECARVER JR., WIELSCH,

11   AIELLO, BERGERHOUSE, and KRENZ seized LEE'S handgun, which was in the business's

12   safe and was not on his person at all that work day.  On or about 3:00 p.m., LEE was handcuffed

13   and taken to the APD facility where he was booked without probable cause, legal justification, or

14   excuse.

15       52.    On information and belief, Plaintiff LEE was transported from the APD Jail

16   facility to the Martinez Jail facility where he was required to post bail in the approximate amount

17   of $80,000.00.

18       53.    On information and belief, the property seized from Plaintiff LEE before the search

19   warrant to search the Business was signed by a judge is as follows: A black in color cloth type

20   backpack valued at approximately $20.00 containing various personal papers and IDs, under an

21   ounce of Marijuana, a black with blue light plastic digital scale valued at approximately $30.00,

22   his Social Security Card, men's cologne and gardening gloves valued at approximately $20.00, a

23   blue case for his CZ 40B handgun, valued at approximately$20.00 to $30.00, and a red in color

24   Ipod Nano valued at approximately $100.00.  Also seized from his person was about $60 cash,

25   which was returned via a check from the CCC West County Jail when he was released.  Also

26   seized from the safe in the O'TOOLES' Store was an all black semi-automatic 40-caliber CZ-

27   brand handgun with night sights, registered to him and previously bought about 6 years prior from

28

Plaintiffs' First Amended Complaint For Damages             12

1   the Antioch Armory Store valued at approximately $500.00.   Also seized from his locker at the

2   Store was a black canvas material holster for the CZ handgun and an extra gun clip valued at

3   approximately $50.00 - $60.00.

4       54.     On information and belief, neither his lawfully possessed marijuana nor his

5   handgun have been returned to him.

6       55.      Upon information and belief, at all times during the events described above, the

7   defendant OFFICERS were engaged in a joint venture.  The individual Officers assisted each

8   other in performing the various described acts and lent their physical presence and support and the

9   authority of their office to each other during illegal search, arrest, and detention of Plaintiff LEE.

10  In addition, defendant Officers caused Mr. Lee loss of property when they required him to incur

11  attorney's fees, lost income, bail fees and loss of his personal property.  Furthermore, the

12  defendant OFFICERS gained control over the criminal enterprise by pursuing improper criminal

13  investigation of Mr. Lee's place of employment and executing fraudulently obtained search

14  warrants to seize his person and personal property.

15      STATEMENT OF FACTS PERTAINING TO  JENNIFER LYNN CURTIS

16      56.     Plaintiffs incorporate by reference each and every allegation contained in

17  Paragraphs 1-55 as though fully set forth herein. On or about June 28, 2007, the CCCNET and

18  other Defendant OFFICERS  conducted a raid at 701 Thompsons Drive, Brentwood, California,

19  94513, the occasional home of Plaintiff  JENNIFER LYNN CURTIS, pursuant to an illegally

20  authorized Search Warrant.

21      57.     On information and belief, the involved Officers included Defendants WIELSCH,

22  VINCELET, McGARY, LOMBARDI, WISECARVER JR. and other Officers from other

23  jurisdictions.  There was money seized in the Thompsons Drive raid belonging to Plaintiff

24  CURTIS of approximately $20,000.00 in cash that was taken from a safe in the home which was

25  unaccounted for and not documented in any search warrant returns or asset forfeiture documents.

26  Although Plaintiff CURTIS was residing in Kevin Ackerman's house on a part-time basis at the

27  time of the raid, CURTIS was never charged for any crime.

28

58.     On information and belief, the items seized that were listed on the "receipt for property seized" which was left at the home were: steroids, unknown pills, hypodermic needles, and an empty vial/cocaine holder.  Also seized was a camera containing photographs of among others, Kevin Ackerman, and Michelle Miracle.  Ms. Miracle  was the girlfriend of Defendant VINCELET at the time the warrant was served.  Defendant WIELSCH employed the services of Christopher Butler, a private investigator who worked with WIELSCH and James Wisecarver Sr. at the Antioch Police Department from 1989 until his employment was terminated in 1996, to render an expert opinion that the steroids seized from Mr. Ackerman's home were possessed for sales.

59.     On information and belief, the items seized that were listed on the return to the search warrant were: a shotgun/ D579536M, indicia/ financial papers, pay/owe note pad, cell phones (2), and a gallon Zip lock w/ meth residue inside.  The seized items that were not on the return to the search warrant filed with the court were the camera containing photographs of Kevin Ackerman and Michelle Miracle and a digital Sony camcorder.

60.     On information and belief, Ms. CURTIS noticed four different cash amounts listed on a seizure document served which was to be used as proof of service for the Contra Costa County Superior Court on Mr. Ackerman by Defendant WIELSCH which had three different amounts inexplicably scratched off.  Because of the discrepancy, Ms. CURTIS was never able to locate or obtain the approximately $20,000.00 which belonged to her.  Also, because neither the camcorder nor the digital camera were listed on the return on the search warrant, Ms. CURTIS was unable to recover those items.

61.     On information and belief, on or about and between October 2008 and February 2009, Defendants WIELSCH, LOMBARDI,  VINCELET, WISECARVER JR., and DOES 1-20 forced entry into 701 Thompsons Drive, Brentwood, California 94513 with guns drawn.  One of the Defendants grabbed Plaintiff CURTIS and handcuffed her and ordered her to lay face down on the floor despite the fact that she was seven months pregnant. Mr. Ackerman was forced face first into the living-room couch and handcuffed. At least one Defendant OFFICER guarded Plaintiff

CURTIS at gunpoint while other Defendant OFFICERS went upstairs and began to search the bedroom.  WIELSCH, LOMBARDI, VINCELET, WISECARVER JR., and DOES 1-20 then left.

62.     On information and belief, Plaintiff CURTIS went upstairs and discovered that a Swiss ICE watch valued at approximately $22,500.00 was missing from her upstairs bedroom. CURTIS also discovered a custom made diamond baguette pendant necklace worth approximately $9,000.00, and a 2-carat diamond earring set, and several thousand dollars were also taken.

63.     On information and belief, no Affidavit for Search Warrant, Return to Search Warrant, or Receipt for Property Seized was ever filed with the Superior Court after the seizure of Plaintiff CURTIS'S currency and property.

64.     On or about May 25, 2011, Plaintiff CURTIS was invited to the San Ramon Police Department to identify a watch which Plaintiff CURTIS positively identified as one of the watches stolen during the armed home invasion robbery on or about and between October 2008 and February 2009.

65.     Upon information and belief, at all times during the events described above, the defendant OFFICERS were engaged in a joint venture.  The individual Officers assisted each other in performing the various described acts and lent their physical presence and support and the authority of their office to each other during illegal search, arrest, and detention of Plaintiff CURTIS.  In addition, defendant OFFICERS caused MS. CURTIS loss of property when they required her to incur attorney's, lost income opportunity, and loss of her personal property to include approximately $20,000 in United States currency, jewelry and other personal property. Furthermore, the defendant OFFICERS gained control over the criminal enterprise by pursuing improper criminal investigation of Ms. CURTIS'S alleged criminal activity and executing fraudulently obtained search warrants and exceeding the authority of the warrants to seize her person and personal property.

## STATEMENT OF FACTS PERTAINING TO JACK FOSTER AND JENNIFER CURTIS

66.     Plaintiffs incorporate by reference each and every allegation contained in Paragraphs 1-65 as though fully set forth herein. On or about January 5, 2010, Defendants

Plaintiffs' First Amended Complaint For Damages                                        15

WIELSCH, VINCELET, and DOES 1-20 served an illegally obtained search warrant with guns drawn on the occupants at 4162 Tulare Court, Antioch, California, to seize property constituting evidence of cultivation of marijuana.  When Defendant WIELSCH, VINCELET and DOES 1-20 entered the property they seized approximately 76 mature plants, a number of immature seedling plants, and cultivation equipment despite the fact that the resident of the premises Plaintiff JACK FOSTER, who was medically disabled, and had a posted marijuana grow certificate pursuant to California Health & Safety Code § 11362.5, (the Compassionate Use Act) which permits the cultivation for medical marijuana medicinal purposes.

67.    On information and belief, in addition to the seizure of the marijuana and growing equipment, Defendants WIELSCH, VINCELET  and DOES 1-20 seized from Plaintiff JACK FOSTER one rare Benelli Super Black Eagle, Ducks Unlimited, 12-Gauge Shotgun, serial number U101866, valued at approximately $6,000.00.  In addition, WIELSCH, VINCELET  and DOES 1-20 seized one F.A. Loomis 10-Gauge Shotgun, serial number 0610 and one Mossburg 12-Gauge Shotgun valued at approximately $300.00, even though there was no nexus between the marijuana and the shotguns as required under the warrant.  Also seized were some currency, jewelry, sunglasses and some sports memorabilia belonging to Plaintiff CURTIS'S son.

68.    Plaintiff JENNIFER CURTIS arrived at the property, which was owned by her boyfriend Kevin Ackerman after Defendants had arrived.  Plaintiff JENNIFER CURTIS was responsible for collecting the rent from the property for her boyfriend Kevin Ackerman and had come to the FOSTER home to collect the rent. After Plaintiff CURTIS arrived on the property, she was detained at gunpoint by one of the defendants WIELSCH, VINCELET, and DOES 1-20 and handcuffed.  Plaintiff was arrested, taken to the Antioch Police Department and was eventually released.

69.    Plaintiff CURTIS'S car keys were seized from her and her locked car was searched by WIELSCH, VINCELET, and DOES 1-20.  Property seized from Plaintiff JENNIFER CURTIS'S car included a wallet containing a number of gift cards from different Department Stores valued at several hundred dollars and Plaintiff Curtis's Cellular phone, and some sunglasses. None of the

property seized was documented on any search warrant return.

70.     Plaintiff JACK FOSTER was arrested and booked for an outstanding failure to appear on a drunk driving warrant.  After he was released on bail, no property receipt was left at the premises or served on Plaintiff FOSTER as required under California Penal Code § 1535.

71.     Plaintiff FOSTER made two written requests to the for a copy of the police report of the seizure of his property and for the return of his firearms to the ANTIOCH POLICE DEPARTMENT on January 19, 2010, and January 26, 2010 which were denied by the ANTIOCH POLICE DEPARTMENT on February 1, 2010.

72.     Despite the strict mandate of Penal Code section 1537 which requires that the "officer must forthwith return the warrant to the magistrate, and deliver to him a written inventory of the property taken. . ." Defendant VINCELET did not file with the court, as required, the Search Warrant, Affidavit for Search Warrant, or the Return to Search Warrant, until April 9, 2010.  When Defendant VINCELET did file the aforementioned documents, he also filed, a County of "Contra Costa Disposition Order for Evidence" requesting permission to destroy the marijuana "due to the high level decomposition and threat of mold spores" the marijuana was alleged to have exhibited. On information and belief the destruction order was obtained under fraudulent circumstances and the marijuana was not destroyed.

73.     On information and belief, defendant VINCELET'S request to destroy the marijuana was consistent with a tactic Defendant WIELSCH used to request destruction of a pound of methamphetamine which was later sold to an undercover police officer in early 2011 and was a common method defendant OFFICERS used to obtain drugs in order to engage in drug trafficking.   On or about May 2009, approximately four months after the FOSTER raid, defendants and co-conspirators  LOMBARDI, WIELSCH, and CHRISTOPHER BUTLER met to discuss the distribution of marijuana.  Plaintiff FOSTER was never charged with any crime regarding any marijuana or weapons offense.

<u>THE RICO SCHEME</u>

74.     Plaintiffs incorporate by reference each and every allegation contained in

Plaintiffs' First Amended Complaint For Damages                                    17

1    Paragraphs 1-73 as though fully set forth herein. On information and belief, Defendants

2    NORMAN WIELSCH, MICHAEL McGARY, LOUIS LOMBARDI, JOSHUA VINCELET,

3    JAMES WISECARVER JR., STEVEN AIELLO,  STEVEN BERGERHOUSE, CHRISTOPHER

4    BUTLER, and DOES 1-20 are members of and in control of an enterprise that conducts illegal

5    searches and seizures, at times with the use of  search warrants and at other times without the aid

6    of a search warrant but always under the color of authority of the Antioch Police Department

7    and/or the Bureau of Narcotics Enforcement, and or CCCNET (Contra Costa County Narcotics

8    Enforcement Team).  Prosecutors from the Contra Costa County District Attorney's Office allege

9    that LOMBARDI met with WIELSCH and CHRISTOPHER BUTLER in May of 2009 in Pleasant

10   Hill, California, to discuss how to make money in the marijuana business. LOMBARDI is also

11   charged with  selling 1,200 ecstasy pills in early 2010,  which were seized by LOMBARDI and

12   WIELSCH.

13        75.    On information and belief,  Defendants WIELSCH, LOMBARDI, and BUTLER are

14   currently out on bail facing numerous felony counts in the Superior Court of California. Among the

15   charges are that WIELSCH and LOMBARDI stole drugs from at least one evidence room and stole

16   drugs confiscated in CCCNET raids, which WIELSCH and/or LOMBARDI  then gave to

17   BUTLER to sell on the streets of Concord, California.  From one seizure, it is alleged that

18   WIELSCH took a pound of methamphetamine and sold it at Butler and Associates, Butler's private

19   investigative firm in Concord.  WIELSCH is also charged with possessing, transporting, and

20   selling marijuana, methamphetamines, and steroids; embezzlement; second-degree burglary; and

21   conspiracy.  WIELSCH and BUTLER were longtime friends and served together as police officers

22   in Antioch in the 1990s.  Defendant WIELSCH is also charged with selling methamphetamine that

23   he removed from an evidence locker pursuant to a judicial order permitting him to destroy the

24   methamphetamine. According to an Affidavit filed by the Contra Costa County Public Defender's

25   Office in the case of *People v.Yongtao Jiang*, who is charged with cultivating marijuana and

26   possessing marijuana for sale, Defendant WIELSCH repeatedly tampered with evidence when he

27   allegedly stole drugs from law enforcement evidence lockers. In another case, WIELSCH  replaced

28

1  methamphetamine he was pretending to destroy with flour and then tried to sell the drugs.

2      76.    On information and belief, NORMAN WIELSCH, MICHAEL McGARY, LOUIS

3  LOMBARDI, JOSHUA VINCELET, JAMES WISECARVER JR., STEVEN AIELLO, STEVEN

4  BERGERHOUSE, and DOES 1-20 would use their police powers, including the power to obtain

5  search warrants, in order to steal money, jewelry, drugs, and other property from various locations,

6  including evidence lockers, drug suspects, and, in some cases, through the use of armed invasion of

7  homes and businesses in Contra Costa County.  In cases of armed invasion, Defendants would

8  enter the home or business at gunpoint and seize the occupants, then enter the home or business

9  and remove property and retain the property for their own use and/or to further their racketeering

10  enterprise.  In other cases, Defendants would use their police powers to obtain court orders to

11  destroy evidence and, instead of destroying the evidence, LOMBARDI and BUTLER would

12  employ confidential informants to sell the drugs.

13      77.    On information and belief, in cases where the Defendants had search warrants, they

14  would return some of the property to the evidence locker of the law enforcement agency and take

15  some of the property for their own personal use or to further their criminal enterprise.

16      78.    On information and belief, in cases where the Defendants did not have a search

17  warrant, the Defendants would illegally detain, search, and in some cases, arrest a citizen and book

18  some of the property, and in other cases confiscate the property for their own use or benefit without

19  the citizen's knowledge or consent and release the citizen.

20      79.    In some cases, some if not all, of the defendants would sell the drugs which were

21  either confiscated, sanctioned for destruction, or stolen property to other drug users and dealers or

22  individuals.

23  80.    In cases where the defendants had possession of stolen property which they had seized

24  under color of law, they would know that the property impacted interstate commerce because the

25  defendants knew the property such as firearms, computers, jewelry and Swiss watches came from

26  an interstate shipment of freight moving from out of state to Contra Costa County, California.

27      81.    After the Defendants seized the property, they would falsify police reports and court

28

1 documents known as "Affidavits for Search Warrants," "Receipts for Property Seized," "Return on

2 Search Warrants," and "Notice of Seizure" documents pursuant to California's Asset Forfeiture

3 laws to conceal their criminal activity.

4 <u>**DAMAGES**</u>

5     82.    As a proximate result of Defendants' conduct, the O'TOOLES  suffered economic

6 damages and financial loss resulting from lost business and property and property interests which

7 caused them to incur cost to replace lost computers, business records and personal property. As a

8 further economic loss proximately caused by defendant's conduct, the O'TOOLES suffered

9 economic harms amounting to intentional interference with contract and interference with

10 prospective business relations because of the loss of economic opportunities suffered while the

11 O'TOOLES were in jail and unable to conduct business.

12     83.    As a further proximate result of Defendant's conduct, the O'TOOLES suffered loss

13 of business good will due to reduction in income after the illegal seizure of the O'TOOLES'

14 business and lost revenue as a result of negative publicity about the illegal search and seizure of the

15 O'TOOLES' persons, business, papers and property.  As a further proximate result of Defendants'

16 conduct, the O'TOOLES lost money spent on bail and attorney's fees to defend against the illegal

17 arrests and to regain their computers.

18     84.    As a further proximate result of Defendants' conduct, the O'TOOLES have suffered

19 severe emotional and mental distress, fear, terror, anxiety, humiliation, embarrassment, and loss of

20 security and dignity.

21     85.    The conduct of Defendant OFFICERS was malicious, wanton, and oppressive as

22 evidenced by the manner in which Defendant OFFICERS illegally searched and seized  the

23 O'TOOLES' persons, business, papers and effects and the unconstitutional manner in which they

24 obtained and executed the warrant.   Plaintiffs are therefore entitled to an award of punitive

25 damages against Defendant OFFICERS.

26     86.    As a proximate result of Defendants' conduct, Plaintiff LEE suffered economic

27 damages and financial loss resulting from lost property and property interest. As a further

28

1  economic loss proximately caused by defendant's conduct, Plaintiff LEE suffered economic harms

2  amounting to intentional interference with contract and interference with prospective business

3  advantage due to his inability work while incarcerated.

4       87.     As a further proximate result of Defendant's conduct Plaintiff LEE lost money spent

5  on bail and attorney's fees.

6       88.     As a further proximate result of Defendants' conduct, Plaintiff LEE has suffered

7  severe emotional and mental distress, fear, terror, anxiety, humiliation, embarrassment, and loss of

8  security and dignity.

9       89.     The conduct of Defendant OFFICERS was malicious, wanton, and oppressive as

10 evidenced by the manner in which Defendant OFFICERS illegally searched and seized Plaintiff

11 LEE and his property and the unconstitutional manner in which they obtained and executed the

12 warrant.   Plaintiff LEE is therefore entitled to an award of punitive damages against Defendant

13 OFFICERS.

14      90.     As a proximate result of Defendants' conduct, Plaintiff CURTIS suffered economic

15 damages and financial loss resulting from lost property and property interest. As a further

16 economic loss proximately caused by defendant's conduct, Plaintiff CURTIS suffered economic

17 harms amounting to intentional interference with contract and interference with prospective

18 business advantage due to her ability to work while incarcerated.

19      91.     As a further proximate result of Defendant's conduct Plaintiff CURTIS lost money

20 spent on bail and attorney's fees.

21 92.     As a further proximate result of Defendants' conduct, Plaintiff CURTIS has suffered severe

22 emotional and mental distress, fear, terror, anxiety, humiliation, embarrassment, and loss of

23 security and dignity.

24      93.     The conduct of Defendant OFFICERS was malicious, wanton, and oppressive as

25 evidenced by the manner in which Defendant OFFICERS illegally searched and seized Plaintiff

26 CURTIS and her property and the unconstitutional manner in which they obtained and executed

27 the warrant.   Plaintiff CURTIS is therefore entitled to an award of punitive damages against

28

Defendant OFFICERS.

94.     As a proximate result of Defendants' conduct, Plaintiff FOSTER suffered economic damages and financial loss resulting from lost property and property interest.

95.     As a further proximate result of Defendant's conduct Plaintiff FOSTER lost money spent on bail.

96.     As a further proximate result of Defendants' conduct, Plaintiff FOSTER has suffered severe emotional and mental distress, fear, terror, anxiety, humiliation, embarrassment, and loss of security and dignity.

97.     The conduct of Defendant OFFICERS was malicious, wanton, and oppressive as evidenced by the manner in which Defendant OFFICERS illegally searched and seized Plaintiff FOSTER and his property and the unconstitutional manner in which they obtained and executed the warrant.

**FIRST CAUSE OF ACTION**

**DEPRIVATION OF CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS**

**(42 U.S.C. § 1983)**

98.     Plaintiffs SEAN O'TOOLE, KELLEY BARBARA O'TOOLE, STEVEN DANIEL LEE, JENNIFER LYNN CURTIS, and JACK FOSTER reallege and incorporate by reference paragraphs 1 through 97 of this complaint.

99.     In doing the acts complained of, Defendant OFFICERS and DOES 1 through 20 acted under color of law to deprive the Plaintiffs SEAN O'TOOLE, KELLEY BARBARA O'TOOLE, STEVEN DANIEL LEE, JENNIFER LYNN CURTIS, and JACK FOSTER of certain constitutionally protected rights, including, but not limited to:

a.  The right to be free from unreasonable search and seizure, as guaranteed by the Fourth Amendment to the United States Constitution (as stated on information and belief in paragraphs 23-42) which was violated when Defendant OFFICERS and Does 1 through 20 seized Plaintiffs SEAN O'TOOLE'S and KELLEY BARBARA O'TOOLE'S persons, business, papers, and effects and then submitted an affidavit in support of a search warrant for 401 Sunset Drive, Suite F,

1   Antioch, California, which was not supported by Probable Cause to conceal their unlawful activity;

2       b.  The right to be free from unreasonable search and seizure, as guaranteed by the Fourth

3   Amendment to the United States Constitution, (as stated on information and belief in paragraphs

4   46-55) which was violated when Defendant OFFICERS and Does 1 through 20 seized Plaintiff

5   STEVEN DANIEL LEE'S person, papers, and effects and then submitted an affidavit in support of

6   a search warrant for 401 Sunset Drive, Suite F, Antioch, California, which was not supported by

7   Probable Cause to justify said illegal seizure;

8       c.  The right to be free from unreasonable search and seizure, as guaranteed by the Fourth

9   Amendment to the United States Constitution (as stated on information and belief in paragraphs

10  68-69)  which was violated when Defendant OFFICERS and Does 1 through 20 seized Plaintiff

11  JENNIFER LYNN CURTIS'S person by false arrest, and  illegally seized her papers, and effects

12  on January 5, 2010 without probable cause when she arrived at 4162 Tulare Court, Antioch,

13  California,  to collect the rent for that property.

14      d.  The right to be free from unreasonable search and seizure, as guaranteed by the Fourth

15  Amendment to the United States Constitution (as stated on information and belief in paragraph 33)

16  which was violated when Defendant OFFICERS and Does 1 through 20 obtained a search warrant

17  for 401 Sunset Drive, Suite F, which was tainted by information obtained by the earlier illegal

18  search that occurred the day the warrant was sought;

19      e.  The right to be free from unreasonable search and seizure, as guaranteed by the Fourth

20  Amendment to the United States Constitution (as stated on information and belief in paragraph 33)

21  which was violated when Defendant OFFICERS and Does 1 through 20 executed the search

22  warrant in reliance upon an affidavit in support of a search warrant for 401 Sunset Drive, Suite F,

23  which they knew was not supported by Probable Cause;

24      f.  The right to be free from unreasonable search and seizure, as guaranteed by the Fourth

25  Amendment to the United States Constitution (as stated on information and belief in paragraphs

26  23-42)  which was violated when Defendant OFFICERS and Does 1 through 20 seized Plaintiff

27  SEAN O'TOOLE'S  business papers, computers, firearm, and other personal property  from 401

28

1  Sunset Drive, Suite F, even after Defendants had obtained a warrant because there was no

2  incriminating character of the  business papers, computers, firearm, and other personal property

3  which was  immediately apparent to Defendant OFFICERS upon their seizure;

4        g.  The right to be free from unreasonable search and seizure, as guaranteed by the Fourth

5  Amendment to the United States Constitution (as stated on information and belief in paragraphs

6  66-67) which was violated when Defendant OFFICERS and Does 1 through 20 seized Plaintiff

7  JACK FOSTER's papers, shotguns, and other personal property  from 4162 Tulare Court on

8  January 5, 2010 , even after Defendants had obtained a warrant because there was no incriminating

9  character of the papers, shotguns, and other personal property which was immediately apparent to

10  Defendant OFFICERS upon their seizure;

11        h.  The right to be free from unreasonable search and seizure, as guaranteed by the Fourth

12  Amendment to the United States Constitution (as stated on information and belief in paragraphs

13  33) which was violated when Defendant OFFICERS and Does 1 through 20 displayed a deliberate

14  disregard for the truth in the affidavit submitted to the magistrate and also deliberately omitted

15  information, that if included in the affidavit would have resulted in a finding of no probable cause

16  to seize Plaintiffs the O'TOOLES' business and personal property,  business computers and

17  company books and records.  Defendant OFFICERS and Does 1-20 relied upon these false

18  averments to assert the necessary probable-cause allegations in order to obtain the issuance of  an

19  overly broad search warrant in order to conduct a  widespread seizure and overly prolonged

20  detention of Plaintiffs the O'TOOLES' business books, papers, and computers.

21        I.  The right of Plaintiffs SEAN O'TOOLE, KELLEY BARBARA O'TOOLE, STEVEN

22  DANIEL LEE, JENNIFER LYNN CURTIS, and JACK FOSTER not to be deprived of life or

23  liberty without due process of law, as guaranteed by the Fourteenth Amendment to the United

24  States Constitution (as stated on information and belief in paragraphs 23-69);

25        j.  The right to be free from interferences with the zone of privacy, as protected by the

26  Fourth and Ninth Amendments to the United States Constitution (as stated on information and

27  belief in paragraphs 23-69);

28

100.   As a proximate result of Defendant Officers' and DOES 1 through 20 wrongful conduct, Plaintiffs SEAN O'TOOLE, KELLEY BARBARA O'TOOLE, STEVEN DANIEL LEE, JENNIFER LYNN CURTIS, and JACK FOSTER  suffered injuries and damages as hereinafter set forth.

WHEREFORE, Plaintiff prays for relief as set forth herein.

## SECOND CAUSE OF ACTION

## CONSPIRACY TO VIOLATE PLAINTIFFS' CIVIL RIGHTS

## (42 U.S.C. § 1983)

101.   Plaintiffs SEAN O'TOOLE, KELLEY BARBARA O'TOOLE, STEVEN DANIEL LEE, JENNIFER LYNN CURTIS, and JACK FOSTER  reallege and incorporate by reference herein paragraphs 1 through 100 of this complaint.

102.   Defendant OFFICERS and Does 1-20 made an agreement to violate Plaintiffs' SEAN and KELLEY BARBARA O'TOOLE'S Fourth Amendment right to be free from unreasonable search and seizure (as stated on information and belief in paragraphs 23-55) when they illegally detained and arrested Plaintiffs SEAN and KELLEY BARBARA O'TOOLE and STEVEN LEE under the supervision of Captain LEONARD ORMAN without probable cause and searched and seized the business and personal property of Plaintiffs the O'TOOLES and then fabricated an overly broad search warrant affidavit which enabled them to seize Plaintiffs' computers and related business records.  Defendant OFFICERS and DOES 1-20 deliberately presented a false and overly broad search warrant to a magistrate for authorization and then seized and retained for an unconstitutionally prolonged period of time critical business records, personal property which Defendants knew was in the stream of interstate commerce, including the Charter Arms firearm manufactured in Shelton, Connecticut; the computers, one of which was a Hitachi manufactured in Japan;  and other personal property not named in the return on the search warrant.

103.   Under the supervision of Captain LEONARD ORMAN, Defendant OFFICERS and Does 1-20 made an agreement to conceal the violations of Plaintiffs' Fourth Amendment right to

1  be free from unreasonable search and seizure (as stated on information and belief in paragraphs 33)

2  when they fabricated police reports of their activities in at least one report documenting the arrest

3  of Daniel Leal, one of Plaintiff's customers.

4         104.    Furthermore, based upon facts stated on information and belief in paragraphs 56-63

5  of this complaint, Defendant OFFICERS, except ORMAN,  KRENZ, JOANNIDES, CHALK,

6  conspired to violate the civil rights of Plaintiff JENNIFER LYNN CURTIS when they illegally

7  seized her person and property and robbed her at gunpoint and fabricated asset forfeiture

8  documents pertaining to the illegal seizure of her property.

9         105.    Defendant WIELSCH, WISECARVER JR., AIELLO, and VINCELET and Does 1-

10  20 made an agreement to violate Plaintiff's JACK FOSTER's Fourth Amendment right to be free

11  from unreasonable search and seizure (as stated on information and belief in paragraphs 66 through

12  73, inclusive) when they illegally detained and arrested JACK FOSTER and seized his property

13  and then fabricated a County of Contra Costa, California Disposition Order for Destruction of

14  Evidence so they could distribute the marijuana unlawfully.  Defendants WIELSCH,

15  WISECARVER JR., AIELLO, and VINCELET and DOES 1-20 deliberately filed the Search

16  Warrant, Affidavit for Search Warrant, Return of Search Warrant and County of Contra Costa,

17  California Disposition Order for Destruction of Evidence almost three months after the marijuana

18  was seized so they had adequate time to conceal their conspiracy to distribute the marijuana

19  illegally.

20

21  ### THIRD CAUSE OF ACTION

22  ### *MONELL* LIABILITY

23  ### (42 U.S.C. § 1983)

24         106.    Plaintiffs SEAN O'TOOLE, KELLEY BARBARA O'TOOLE, STEVEN DANIEL

25  LEE, JENNIFER LYNN CURTIS, and JACK FOSTER  reallege and incorporate by reference

26  herein paragraphs 1 through 105 of this complaint.

27         107.    Defendants CITY, HYDE, and DOES 1 through 20, by and through their

28

1  supervisory officials and employees, have been given notice on repeated occasions of a pattern of

2  ongoing constitutional violations and practices by Defendant police officers herein and other

3  Antioch police officers, constituting *inter alia*, illegal detentions, searches, and seizures of citizens,

4  the submission of search warrant affidavits not based upon probable cause, submission of overly

5  broad search warrants, and submission of false affidavits.  Despite said notice, Defendants CITY,

6  HYDE, and DOES 1 through 20 have demonstrated deliberate indifference to this pattern and

7  practice of constitutional violations by failing to take necessary, appropriate, or adequate measures

8  to prevent the continued perpetuation of said pattern of conduct by Antioch police officers and

9  other outside agencies.  This lack of adequate supervisorial response by Defendants CITY, HYDE,

10  and DOES 1 through 20 demonstrates ratification of the Defendant Officers' unconstitutional acts,

11  as well as the existence of an informal custom or policy which tolerates and promotes the

12  continued conduct (as stated on information and belief in paragraphs 60, 33,72) including illegal

13  detentions, searches, and seizures of the citizens of Antioch, the submission of search warrant

14  affidavits not based upon probable cause, submission of overly broad search warrants, and

15  submission of false affidavits against the citizens by Antioch police officers and other outside

16  agencies.

17       108.    The acts of Defendant OFFICERS and DOES 1 through 20 alleged herein are the

18  direct and proximate result of the deliberate indifference and policy and/or practice of conduct  (as

19  stated on information and belief in paragraphs 60, 33,72) of Defendants CITY, HYDE, and DOES

20  1 through 20 and their supervisory officials and employees to violations of the constitutional rights

21  of citizens by Defendant police officers herein, and other members of the Antioch Police

22  Department.  The Plaintiffs' injuries were foreseeable and a proximate result of the deliberate

23  indifference of the CITY, HYDE, and DOES 1 through 20 to the pattern, practices, customs, and

24  policies described above.

25       WHEREFORE, Plaintiff prays for relief as set forth herein.

26

27

28

## FOURTH CAUSE OF ACTION

### VIOLATION OF CIVIL RICO PROVISIONS

#### 18 U.S.C. § 1962©)

109.    Plaintiffs incorporate by reference rhetorical paragraphs 1-108 as if fully set forth herein and complain as follows:

110.    Defendant Officers  NORMAN WIELSCH, MICHAEL McGARY, LOUIS LOMBARDI, JOSHUA VINCELET, JAMES WISECARVER JR., STEVEN AIELLO,  STEVEN BERGERHOUSE, and CHRISTOPHER BUTLER are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1962©).

111.    Defendants Officers  NORMAN WIELSCH, MICHAEL McGARY, LOUIS LOMBARDI, JOSHUA VINCELET, JAMES WISECARVER JR., STEVEN AIELLO,  STEVEN BERGERHOUSE, and CHRISTOPHER BUTLER conducted and participated, either directly, and/or indirectly in the acts of: Robbery (as stated on information and belief in paragraphs 30, 32, 35-38,48-49, 51, 53,59, 61-62,66-67,and 69), dealing in a controlled substance or listed chemical (as stated on information and belief in paragraphs 74-76), possession of stolen property with knowledge that jewelry, sports memorabilia, guns, and computers, and other property were stolen from an interstate shipment of freight moving in interstate commerce (as stated on information and belief in paragraphs 34, 36-39 ,49, 51, 53, 57, 59, 62, 67,and 69), and tampering with witnesses (as stated on information and belief in paragraphs 31, 33, 39-42, 56, 60,72, 73).  The conduct stated by NORMAN WIELSCH, MICHAEL McGARY, LOUIS LOMBARDI, JOSHUA VINCELET, JAMES WISECARVER JR., STEVEN AIELLO,  STEVEN BERGERHOUSE, and CHRISTOPHER BUTLER  above as well as the communication between Defendants NORMAN WIELSCH, JOSHUA VINCELET, JAMES WISECARVER JR., STEVEN AIELLO, and STEVEN BERGERHOUSE, via cellular phone respectively (as stated on information and belief in paragraph 32) constitutes an enterprise engaged in interstate commerce within the meaning of 18 U.S.C. §§ 1961(4) and 1962 ©), as it is an association in fact.

112.    Defendants  NORMAN WIELSCH, MICHAEL McGARY, LOUIS LOMBARDI,

1   JOSHUA VINCELET, JAMES WISECARVER JR., STEVEN AIELLO,  STEVEN

2   BERGERHOUSE, and CHRISTOPHER BUTLER, who are members of the racketeering

3   enterprise as defined in paragraphs 74 -81 above, participated in at least two predicate crimes,

4   including, but not limited to: 1) 18 U.S.C. § 1512(b)(2)(B) (Witness Tampering) by preparing false

5   search warrant affidavits, returns, property receipts, and a Notice of Asset Forfeiture document on

6   June 28, 2007 to conceal  the illegal seizure of property from Plaintiff CURTIS from 701

7   Thompsons Drive, Brentwood, California, and the fabrication of a false County of Contra Costa,

8   California Disposition Order for Destruction of Evidence pertaining to the marijuana seized from

9   Plaintiff JACK FOSTER from his residence on 4162 Tulare Court, Antioch, California, on January

10  5, 2010; 2) 18 U.S.C. § 1961(1) any act or threat involving  robbery, on or about and between

11  October 2008 and February 2009, when Defendants WIELSCH, LOMBARDI, WISECARVER

12  JR., VINCELET and DOES 1-20 entered Plaintiff CURTIS'S home and took property by force and

13  fear while she was pregnant after forcing her to lie face-down on the floor at gunpoint and

14  handcuffing her, stole jewelry and cash and from her home, and (Dealing in Controlled

15  Substances) violation of California Health and Safety Code sections 11360.

16         113.   The pattern of predicate crimes has extended over a substantial period of time, is

17  continuing, and poses a threat to recur in the future absent intervention.

18         114.   The enterprise has committed these criminal acts within the last ten years, and these

19  criminal acts substantially affect interstate commerce.

20         115.   Plaintiffs were injured in their property within the meaning of 18 U.S.C. § 1964©)

21  through the enterprise's commission of predicate and related crimes.

22         WHEREFORE, Plaintiffs request the following relief as to the racketeering count:

23  (a)    To declare the Defendants' conduct unlawful;

24  (b)    To award compensatory damages in the sum of $500,000 as to each Plaintiff

25  ©)    To award treble damages as to each Plaintiff;

26  (d)    To award attorneys fees and costs as to each Plaintiff; and

27  (e)    To grant such other relief as the Court deems proper.

28  Plaintiffs' First Amended Complaint For Damages                                    29

1    116.    **TOLLING OF THE CONSPIRACY CAUSES OF ACTION**

2        Because the civil conspiracy has been properly alleged and proved, the statute of limitations

3    has not begin to run until the 'last overt act' pursuant to the conspiracy which occurred on or about

4    October 14, 2009  has been completed.  (See *WASCO PRODUCTS, INC*., v. *SOUTHWALL*

5    *TECHNOLOGIES, INC.*, 435 F.3d 989 (9th Cir.2005).

6                                                **JURY DEMAND**

7        117.    Plaintiff hereby demands a jury trial in this action.

8                                                **PRAYER**

9        WHEREFORE, Plaintiffs pray for relief as to the civil rights causes of action as follows:

10       1.       General damages of $1,000,000.00 as to each plaintiff;

11       2.       Special damages according to proof at trial as to each Plaintiff;

12       3.       Punitive damages against individually named police officers according to proof at

13   trial as to each Plaintiff;

14       4.       Attorney's fees and costs pursuant to 18 USC § 1988 for each Plaintiff;

15       5.       Costs of suit incurred herein as to each Plaintiff;

16       6.       Such other and further relief as the Court may deem just and proper.

17

18   Dated: August 12, 2011                    Respectfully submitted,

19                                             LAW OFFICES OF TIM A. PORI

20

21                                  By:     /s/  Tim A. Pori

22                                          TIM A. PORI

23                                          Attorney for Plaintiffs  SEAN O'TOOLE, KELLEY

24                                          BARBARA O'TOOLE, STEVEN DANIEL LEE,

25                                          JENNIFER LYNN CURTIS, and JACK FOSTER

26

27

28