```
 1                UNITED STATES DISTRICT COURT
 2               NORTHERN DISTRICT OF CALIFORNIA
 3                        ---oOo---
 4   SEAN O'TOOLE, KELLEY O'TOOLE,       )
     STEVEN DANIEL LEE, JENNIFER LYNN    )
 5   CURTIS, and JACK FOSTER,            )
                                         )
 6                    Plaintiffs,        )
                                         )
 7              vs.                      ) No. CV-11-01502 PJH
                                         )
 8   CITY OF ANTIOCH, ANTIOCH POLICE     )
     DEPARTMENT, JAMES HYDE, CHIEF OF    )
 9   ANTIOCH POLICE DEPARTMENT, NORMAN   )
     WIELSCH, JOSHUA VINCELET, JAMES     )
10   WISECARVER JR., STEVEN AIELLO,      )
     AND DOES 1-20, inclusive,           )
11                                       )
                      Defendants.        )
12   _____)
13
14
15
16
17              DEPOSITION OF STEVEN AIELLO
18                   Vallejo, California
19                    October 30, 2014
20
21
22
23   ATKINSON-BAKER, INC.
     COURT REPORTERS
24   (800) 288-3376
     www.depo.com
25   REPORTER: LAURA AXELSEN, CSR 6173
```

```
 1                UNITED STATES DISTRICT COURT
 2               NORTHERN DISTRICT OF CALIFORNIA
 3                        ---oOo---
 4   SEAN O'TOOLE, KELLEY O'TOOLE,      )
     STEVEN DANIEL LEE, JENNIFER LYNN   )
 5   CURTIS, and JACK FOSTER,           )
                                        )
 6                 Plaintiffs,          )
                                        )
 7        vs.                           )  No. CV-11-01502 PJH
                                        )
 8   CITY OF ANTIOCH, ANTIOCH POLICE    )
     DEPARTMENT, JAMES HYDE, CHIEF OF   )
 9   ANTIOCH POLICE DEPARTMENT, NORMAN  )
     WIELSCH, JOSHUA VINCELET, JAMES    )
10   WISECARVER JR., STEVEN AIELLO,     )
     AND DOES 1-20, inclusive,          )
11                                      )
                   Defendants.          )
12   _____)
13
14                        --oOo--
15        BE IT REMEMBERED THAT, pursuant to Notice and on
16   Thursday, October 30, 2014 at 10:09 a.m. thereof at 521
17   Georgia Street, Vallejo, California, before me, LAURA
18   AXELSEN, a Certified Shorthand Reporter, personally
19   appeared
20                       STEVEN AIELLO,
21   called as a witness by the plaintiff.
22                        ---oOo---
23
24
25
```

```
 1            MR. BLECHMAN:  Overbroad.  Incomplete
 2   hypothetical.  Calls for a legal conclusion.  You can
 3   respond.
 4            THE WITNESS:  For us to preserve the evidence
 5   inside pending the issuance of a search warrant.
 6            MR. PORI:    Q.   But under what circumstances
 7   may you do that?
 8            MR. BLECHMAN:  Same objection.
 9            THE WITNESS:  Many.  I mean, it just depends.
10   Everything's -- every circumstance, situation's
11   different.  I can't give you a hypothetical.
12            MR. PORI:    Q.   Okay.  You did say that,
13   uhm -- if I'm not mistaken -- that you were able to --
14   you were authorized to freeze a business and then take
15   control of individuals inside of the business?
16       A.   To detain the individuals inside the business
17   and to, you know, keep them from moving around and
18   possibly destroying evidence inside, yes.
19       Q.   Okay.  So when you are securing an area
20   pending the issuance of a search warrant, can you simply
21   detain individuals simply because they're in a business?
22            MR. BLECHMAN:  Incomplete hypothetical.  Calls
23   for a legal conclusion.  You can respond.
24            THE WITNESS:  Yes.
25            MR. PORI:    Q.   Okay.  Do you -- are you
```

1  the evidence in that business.
2      Q.   And tell us what you mean when you say you
3  have a right to detain that person.
4           MR. BLECHMAN:  Calls for --
5      Q.   What do you do when you detain somebody?
6           MR. BLECHMAN:  Calls for a legal conclusion.
7  You can respond.
8           THE WITNESS:  Contact them, identify them, see
9  what the relationship is tied to the business or the
10 residence.
11          MR. PORI:   Q.   Do you search them?
12     A.   Uhm, we -- me, personally, yeah, I'll pat
13 search them, make sure there's no weapons on them.  I
14 usually ask -- I almost always ask for consent
15 beforehand, to pat search somebody.
16     Q.   Okay.  Okay.  In this particular case, uhm, do
17 you recall, uhm, executing a search warrant on
18 October 14th, 2009, at the Grow It Yourself Gardens?
19     A.   I recall being at that location, yes.
20     Q.   401 Sunset Drive, uhm, Suite F, in Antioch,
21 California; you recall being there?
22     A.   Correct.
23     Q.   And do you recall, uhm, entering into that
24 business?
25     A.   Yes.

```
 1  that you're not allowed to even pat search an individual
 2  for weapons simply because they're in a business that's
 3  about to be frozen?
 4          MR. BLECHMAN:  Same objections.
 5          THE WITNESS:  About to be frozen or that has
 6  been frozen?
 7          MR. PORI:  Q.  Either way.  Either instance.
 8       A.  Well, if it's about to be frozen, I wouldn't
 9  be making contact with them.  If it was frozen and we
10  were inside making contact, then I would pat search
11  them.
12       Q.  Okay. Based on the mere fact that the
13  business was being frozen, correct?
14       A.  Correct.
15       Q.  Okay. So you don't pat search anybody, uhm --
16  well, let me ask it this way:  When you pat search
17  someone, you automatically pat search them when you're
18  going to freeze a business; isn't that right?
19          MR. BLECHMAN:  Overbroad.  Incomplete
20  hypothetical.  You can respond.
21          THE WITNESS:  It just depends on the
22  circumstances.
23          MR. PORI:  Q.  Tell me some -- tell me a set
24  of circumstances when you would not pat search someone
25  inside a business that is suspected to have marijuana
```

```
 1  inside the business, or growing marijuana.
 2       A.   A circumstance when I would not?
 3       Q.   Yeah, when you would not.
 4       A.   I've never served a search warrant on a
 5  business where they were growing marijuana or had
 6  marijuana inside.
 7       Q.   Okay.  Well, what about in the situation like
 8  the O'Toole case, where you were freezing the business?
 9  Give me a set of circumstances when you were freezing a
10  business, a home, or any other property, uhm -- give
11  me -- where there's, uhm, no evidence that they're
12  presently armed and dangerous.
13            MR. BLECHMAN:  Well, I think -- I think you
14  left off portions of the question, so I think it's vague
15  and ambiguous.  If you understand it, you can respond.
16            THE WITNESS:  I don't.  It doesn't make any
17  sense.
18            MR. PORI:  Q.  Okay.  Let me ask it this
19  way:  Are you allowed to just simply pat search somebody
20  just because you're going to freeze the business?
21            MR. BLECHMAN:  Incomplete hypothetical.  Calls
22  for a legal conclusion.  You can respond.
23            THE WITNESS:  You're saying just because we're
24  going to.  It's either we have or we haven't.  If we're
25  in the business freezing or seizing the business, then
```

```
 1   yes, I believe we can pat search somebody --
 2              MR. PORI:   Q.   Based on --
 3        A.    -- for weapons.
 4        Q.    -- the mere fact that --
 5        A.    That we are inside the business freezing the
 6   business.
 7        Q.    Okay.  That's all I'm trying to get at.
 8              So they don't have -- you don't have to make a
 9   determination as to whether or not they're presently
10   armed and dangerous before you pat search them, do you?
11        A.    No, not from my knowledge, no.  Not for me.
12        Q.    Okay.  So if you go into a business and your
13   intention is to freeze the business, you're allowed to
14   pat search for weapons, correct?
15              MR. BLECHMAN:  Asked and answered.  Incomplete
16   hypothetical.  Calls for a legal conclusion.  You can
17   respond again.
18              THE WITNESS:  I know my practice is to pat
19   search them for weapons.
20              MR. PORI:   Q.   Okay.  And have you ever had
21   an instance where you've gone into a place that you were
22   freezing where you simply allowed people to leave the
23   building without asking them for any information, pat
24   searching, or doing anything, just allowing them to
25   leave?
```

```
 1              MR. PORI:   Q.   Okay.  But you see it in the
 2    camera, right?
 3              MR. BLECHMAN:   Calls for speculation.  Lacks
 4    foundation.
 5              THE WITNESS:   I see them leaving the area from
 6    where the officer is walking and sitting down.
 7              MR. PORI:   Q.   So they're not being
 8    detained; is that correct?
 9              MR. BLECHMAN:   Lacks foundation.  Calls for a
10    legal conclusion.
11              MR. PORI:   Q.   Well, you work at the City of
12    Antioch as a police officer, correct?
13         A.   Correct.
14         Q.   And uhm, how many businesses have you frozen?
15         A.   Businesses?
16         Q.   Yeah.
17         A.   Probably less than five.
18         Q.   How many homes have you frozen?
19         A.   I can't count.
20         Q.   How many vehicles?
21         A.   I don't know.
22         Q.   Okay.  When an individual is pat searched in
23    this manner and is told to sit, is it -- is it normal
24    practice for an Antioch police officer to pat search
25    someone and then tell them to sit down?
```

```
 1              MR. BLECHMAN:  Incomplete hypothetical.  Lacks
 2   foundation.  Calls for speculation.  Overbroad.  Go
 3   ahead.
 4              THE WITNESS:  I can't speak to what other
 5   officers do.
 6              MR. PORI:  Q.  Is there a policy on this,
 7   Antioch police policy on this?
 8        A.   Not that I'm aware of.
 9        Q.   Detaining -- so just in general, is there an
10   Antioch Police Department policy on how it is that an
11   officer is supposed to freeze a business, what -- what
12   steps they are to take?
13        A.   There's no policy.
14        Q.   So it's on a case-by-case basis?
15        A.   That's correct.
16        Q.   Each officer determines what is appropriate?
17              MR. BLECHMAN:  Argumentative.  Lacks
18   foundation.  Incomplete hypothetical.  Calls for a legal
19   conclusion.  You can respond.
20              THE WITNESS:  Yes.
21              MR. PORI:  Q.  So Antioch leaves it up to
22   the individual officer in the field to make the judgment
23   call as to what is appropriate in a particular
24   circumstance when it comes to freezing a business,
25   correct?
```

CERTIFICATE

I, the undersigned, a Certified Shorthand Reporter, State of California, hereby certify that the witness in the foregoing deposition was by me first duly sworn to testify to the truth, the whole truth, and nothing but the truth in the within-entitled cause; that said deposition was taken at the time and place therein stated; that the testimony of the said witness was reported by me, a disinterested person, and was thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete, and true record of said testimony; and that the witness was given an opportunity to read it and, if necessary, correct said deposition and to subscribe the same; that prior to the completion of the foregoing deposition, review of the transcript was requested.

I further certify that I am not of counsel or attorney for either or any of the parties in the foregoing deposition and caption named, nor in any way interested in the outcome of the cause named in said caption.

this 11th day of November, 2014.

LAURA AXELSEN, C.S.R. 6173