JAMES V. FITZGERALD, III (State Bar No. 55632)
NOAH G. BLECHMAN (State Bar No. 197167)
McNamara, Ney, Beatty, Slattery,
Borges & Ambacher LLP
1211 Newell Avenue
Post Office Box 5288
Walnut Creek, CA 94596
Telephone: (925) 939-5330
Facsimile: (925) 939-0203

Attorneys for Defendants
CITY OF ANTIOCH, ANTIOCH POLICE DEPARTMENT,
JAMES HYDE CHIEF OF ANTIOCH POLICE
DEPARTMENT, JOSHUA VINCELET, JAMES
WISECARVER, JR., STEVEN AIELLO, STEVEN
BERGERHOUSE, RONALD KRENZ, DANIELLE
JOANNIDES, STEPHANIE A. CHALK, CAPTAIN
LEONARD ORMAN, MATTHEW KOCH and DESMOND
BITTNER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN O'TOOLE, KELLEY O'TOOLE, STEVEN DANIEL LEE, JENNIFER LYNN CURTIS, and JACK FOSTER,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF ANTIOCH, et al.<br><br>Defendants. | Case No. CV11-01502 PJH<br><br>**ANTIOCH DEFENDANTS' TRIAL BRIEF**<br><br>Judge: Hon. Phyllis Hamilton<br><br>Pretrial Conf: October 8, 2015<br>Trial Date: November 2, 2015 |

The Antioch Defendants provide the following Trial Brief on the issues that remain for trial in this case versus the Antioch Defendants, following the Court's issuance of the Order RE Motions for Summary Judgment (ECF 179). Other claims remain to be tried against Defendants Wielsch, Butler and Lombardi by Plaintiff Curtis.

### I. GROW IT YOURSELF GARDENS (GIYG)

**(Plaintiffs Sean & Kelley O'Toole, Steven Lee)**

The claims that remain relate to alleged Fourth Amendment violations arising out of the

ANTIOCH DEFENDANTS' TRIAL BRIEF – C11-1502 PJH

police contact, search and seizure at the GIYG location on October 14, 2009, by officers of the Antioch Police Department (APD). This is the First Cause of Action for a § 1983 violation per the Fourth Amendment. This claim is against the following APD Defendants (and APD Defendants only): Vincelet, Wisecarver, Aiello, Bergerhouse, Krenz, Joannides, Chalk, Orman, Koch and Bittner.

More specifically, it appears the following claims remain in this case surrounding the GIYG search warrant incident:

### A. Kelley and Sean O'Toole

The Court has already determined that Plaintiffs have failed to demonstrate that Kelley O'Toole was unlawfully detained at the Fashion Statement (FS) location or her detention was unreasonably prolonged. (ECF 179, pg. 11:6-16). As such, Kelley O'Toole can no longer assert she was unlawfully detained or that the length of her detention was unlawful.

Whether or not Kelley O'Toole voluntarily gave her keycard to Vincelet and/or consented to the initial entry into the GIYG is a triable issue for trial. Additionally, whether or not GIYG was "open to the public" at the time officers first entered to make contact with Plaintiff Sean O'Toole remains at issue. It should be noted that when officers initially entered, they did so with the intent to talk to Plaintiff Sean O'Toole and did not perform any search at that point in time. Another issue is whether or not the APD officers involved had exigent circumstances to originally enter the GIYG location to make contact with Sean O'Toole. Defendants believe there will be sufficient evidence on these points by Defendants. <u>There may also be qualified immunity issues surrounding some of these factual disputes, especially for the officers accompanying Det. Vincelet inside initially, an issue that will need to be addressed on the verdict form via the use of factual questions to the jury.</u>

The next issue is whether the APD Defendants had probable cause and exigent circumstances to believe that it was necessary to enter and freeze the GIYG location pending the issuance of a search warrant. The probable cause standard is met when a prudent person would conclude that there is a **fair probability** that a person had committed or is committing a crime. *Blankenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007); *Illinois v. Gates*, 462 U.S.

213, 214 (1983) (emphasis added).  Based upon what was found at the FS location (suspected grow operation, shotgun, marijuana and cameras that were controlled at GIYG), Det. Vincelet believed there was potential marijuana cultivation and/or possession for sales occurring out of GIYG.  There was more than a fair probability that a crime had been committed at the GIYG location and the low threshold probable cause standard can be met here.

During the course of the investigation, officers saw Lee take a black backpack to an SUV in the parking and believed that he was removing evidence from the GIYG location.  In addition, officers knew that their actions at the FS were being remotely monitored next door at the GIYG so there were additional chances for people inside of GIYG to try to destroy additional evidence. These facts led to the exigent circumstances that officers needed to preserve the evidence at the GIYG location to go seek a search warrant. *Minnesota v. Olson*, 495 U.S. 91, 100 (1990). After making that decision, officers re-entered the GIYG location to secure the premises pending the issuance of the search warrant because they believed they had probable cause and exigent circumstances to do so. *Segura v. U.S.*, 468 U.S. 796 (1984).

When entering to freeze the location, officers had the right, as this was a narcotic investigation, to perform a brief protective sweep for persons to fully secure the location. *Segura v. U.S.*, 468 U.S. 796, 798 (1984) (officers are lawfully able to enter a premises and conduct a protective sweep pending the issuance of a search warrant).

After officers secured the premises, officers performed some basic investigative functions inside the business, but did not perform any searches for evidence of cultivation or sales of marijuana.  Plaintiffs cannot prove these activities were unlawful searches pending the issuance of the search warrant.

Once the search warrant was obtained, officers were then able to perform the search for evidence described per the search warrant.  As a search warrant was obtained by Det. Vincelet, there is a presumption that the search warrant was based upon probable cause.  To invalidate the search warrant, Plaintiffs need to "*both* establish a substantial showing of a deliberate falsehood or reckless disregard and establish that, without the dishonesty included or omitted information, the magistrate would not have issued the warrant." *Hervey v. Estes*, 65 F.3d 784, 789 (9th Cir.

1995). (emphasis in original). The fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in "objective good faith." *Messerschmidt v. Millender*, 132 S.Ct. 1235, 1245 (2012), citing *United States v. Leon*, 468 U.S. 897, 922–923(1984). The exception is when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The shield of immunity otherwise conferred by the warrant will be lost where the warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923. The threshold for establishing this exception is a high one. *Messerschmidt*, 132 S.Ct. at 1245. As stated in *Leon*, "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination" because "[i]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the 4th Amendment." *Leon*, 468 U.S. at 921. Plaintiffs will not be able to meet the high burden by showing that the search warrant was so lacking in probable cause or that it included deliberate falsehoods or deliberate omissions.

B.   **Steven Lee**

Mr. Lee was lawfully detained when officers entered the GIYG store to freeze the location pending the issuance of a search warrant. *Muehler v. Mena*, 544 U.S. 93, 98 (2005) (officers executing a search warrant for contraband may detain the occupants of the premises for the search); *People v. Ingram*, 16 Cal.App.4th 1745, 1752-53 (1993) (business owners and regular employees may be detained, or those with ownership or control).

After some brief discussion with Lee, he gave consent to officers to search his girlfriend's car and its contents if officers could locate the keys. Then, when Lee saw officers looking through the windows and he was fearful they would break the window, Lee pressed the button on the keys to open the car and allow officers to locate the black backpack. This is another example of the consent by Lee.

Once officers obtained the backpack and then searched it per the consent, that is when they located various containers of marijuana and other items when led them to believe that the

marijuana was possessed for sale. The items in the backpack would lead a prudent person to conclude that there is a fair probability that Lee had committed or is committing a crime. *Blankenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007). As such, there was probable cause to arrest Lee.

As stated in the Motions in Limine, Lee should be precluded from seeking damages from the APD Defendants for his criminal prosecution as such prosecution was independently initiated by the Contra Costa County District Attorney's Office.

### C.     Qualified Immunity

Each of the APD Defendants seek to continue to assert qualified immunity arguments in this case, especially the APD Defendants that were not the lead officers for the GIYG investigation. This would include APD Defendants Steven Bergerhouse, Ronald Krenz, Danielle Joannides, Stephanie A. Chalk, Captain Leonard Orman, Matthew Koch and Desmond Bittner as examples. The GIYG Plaintiffs cannot point to specific conduct of these officers that directly violated their rights. In addition, these officers were relying upon their lead investigator Det. Vincelet regarding the contact with Sean O'Toole initially and the decision to freeze the GIYG to seek a search warrant.

Law enforcement officers are entitled to rely upon information obtained from fellow officers. *Motley v. Parks*, 432 F.3d 1072, 1081 (9th Cir. 2005) (en banc), *overruled on other grounds*, *U.S. v. King*, 687 F.3d 1189 (9th Cir. 2012) (finding that "law enforcement officers are generally entitled to rely on information obtained from fellow law enforcement officers."). As indicated above, officers are entitled to rely upon the decision to freeze the GIYG by Det. Vincelet to obtain a search warrant and the search warrant itself as being valid. This argument is true for all officers (other than Det. Vincelet who wrote the actual search warrant) that are involved in this case. These issues will have to be flushed out better via the crafting of the verdict form.

The APD Defendants request that the verdict form address factual issues so if determined one way or another, the Court could find no constitutional violation for these officers and/or that they are entitled to qualified immunity. We concede that there are factual discrepancies for Det.

ANTIOCH DEFENDANTS' TRIAL BRIEF - C11-1502 PJH           5

Vincelet, Det. Wisecarver and Det. Aiello that make this process more difficult in terms of the crafting of such verdict form questions, though we are still seeking qualified immunity for these officers.

## II. TULARE COURT SEARCH WARRANT
### (Plaintiffs Jennifer Curtis, Jack Foster)

The claims that remain relate to alleged Fourth Amendment violations arising out of the police contact, search and seizure at the 4162 Tulare Court, City of Antioch location on January 5, 2010, by officers of the Antioch Police Department (APD). This is the First Cause of Action for a § 1983 violation per the Fourth Amendment. It should be noted that Defendants Wielsch, Lombardi and Butler were NOT present at this scene at any time, despite purported testimony about that from either or both Plaintiffs Curtis and/or Foster. This was an APD only law enforcement action. Despite that fact, it appears that Defendants Wielsch, Lombardi and Butler are still involved in this alleged 2010 incident. As for the APD Defendants involved, the only APD Defendants at issue in this part of the case are Det. Joshua Vincelet and Det. James Wisecarver, per the Court's Order (ECF 179). All other APD Defendants were dismissed from this aspect of this case.

It should be noted that in light of Curtis and Foster's felony criminal convictions arising out of this search warrant and per the Court's Order (ECF 179), <u>these Plaintiffs cannot challenge the merits of their detentions, arrests or the items seized pursuant to the search warrant, as such allegations would undermine their criminal convictions per *Heck* and its progeny and undermine the search warrant which was essentially validated per the convictions.</u>

What then remains is a claim by Plaintiffs Curtis and Foster that <u>other personal property</u> (meaning property that was not part of the search warrant or seized per the search warrant) of theirs was stolen by either Vincelet, Wisecarver, Butler, Lombardi or Wielsch. This supposedly includes claimed cash, jewelry, sunglasses, sports memorabilia and a cell phone (ECF 179, pg. 35:10-15). The undersigned concedes that property that is <u>stolen</u> during a search warrant would violate the Fourth Amendment.

The defense to this issue by Det. Vincelet and Det. Wisecarver is that there is no evidence

that they stole any items of these Plaintiffs during the execution of the search warrant. Qualified immunity does not appear to be at issue as it does not seem to be a viable defense to intentional stealing of personal property. This appears to be the only issue remaining for these Plaintiffs versus Det. Vincelet and Det. Wisecarver and is entirely factual in nature.

Dated: September 14, 2015　　　　MCNAMARA, NEY, BEATTY, SLATTERY, BORGES & AMBACHER LLP

By: /s/ Blechman, Noah
JAMES V. FITZGERALD, III
NOAH. G. BLECHMAN
Attorneys for Defendants CITY OF ANTIOCH, ANTIOCH POLICE DEPARTMENT, AIELLO, VINCELET, WISECARVER JR., BERGERHOUSE, HYDE, KRENZ, JOANNIDES, CHALK, ORMAN, KOCH and BITTNER